O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BEVERLY THOMAS FOR L.H., | ) NO. CV 08-06887-MAN |
| Plaintiff, | ) |
| | ) MEMORANDUM OPINION |
| v. | ) |
| | ) AND ORDER |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

On October 27, 2008, plaintiff's mother filed a Complaint on behalf of her minor daughter ("plaintiff") seeking review of the denial by the Social Security Commissioner ("Commissioner") of her application for supplemental security income ("SSI").  On May 6, 2009, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  The parties filed a Joint Stipulation on July 13, 2009, in which:  plaintiff seeks an order reversing the Commissioner's decision and finding that plaintiff is disabled and entitled to SSI benefits or, in the alternative, remanding the matter for a new administrative hearing; and defendant requests that the Commissioner's decision be affirmed.  The Court has taken the

1

parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On June 14, 1994, plaintiff's mother filed an application for SSI on behalf of plaintiff, who was born on March 26, 1994, alleging disability based on asthma. (Administrative Record ("A.R.") 82-94.) In a favorable decision dated July 1, 1997, Administrative Law Judge Morton J. Rubin ("ALJ Rubin") determined that plaintiff was eligible for SSI, effective June 14, 1994, based on "severe" chronic pulmonary insufficiency. (A.R. 740.) ALJ Rubin found that the severity of plaintiff's pulmonary impairment met the criteria of Medical Listing 103.02(C)(2).[1] (A.R. 741.)

Following ALJ Rubin's favorable disability determination, the Social Security Administration ("SSA") conducted a continuing disability review[2] of plaintiff's case and, on February 14, 2002, found that plaintiff had medically improved as of February 1, 2002. (A.R. 68-72.)

---

[1] Medical Listing 103.02(C)(2) refers to "chronic pulmonary insufficiency" with "[f]requent need for [n]octurnal supplemental oxygen as required by persistent or recurrent episodes of hypoxemia." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 103.02(C)(2)

[2] When a claimant has been granted benefits, her "continued entitlement to such benefits must be reviewed periodically." 20 C.F.R. § 416.994a(a); *see also* 20 C.F.R. § 416.989 ("After we find that you are disabled, we must evaluate your impairment(s) from time to time to determine if you are still eligible for payments based on disability"). To accomplish this, the SSA engages in "continuing disability reviews," which vary in frequency. 20 C.F.R. § 416.989; Flaten v. Sec'y of Health and Human Servs., 44 F.3d 1453, 1460 (9th Cir. 1995). Because a presumption of continuing disability arises once a claimant has been identified as disabled, the Commissioner has the burden of producing evidence to meet or rebut the presumption. *See* Bellamy v. Sec'y of Health and Human Servs., 755 F.2d 1380, 1381 (9th Cir. 1985).

1  Benefits were ceased effective February 1, 2002. (A.R. 68.) Plaintiff
2  appealed the SSA's determination. (A.R. 73-77.)

3

4      On January 7, 2004, plaintiff and her mother, who were not
5  represented by counsel, testified at a hearing before Administrative Law
6  Judge Edward Graham ("ALJ Graham"). (A.R. 48-65.) At the hearing,
7  plaintiff's mother testified that plaintiff continued to be disabled due
8  to her asthma and also alleged that plaintiff experienced educational
9  difficulties and trouble with attention and concentration. (A.R. 28,
10 56.)

11

12     On January 22, 2004, ALJ Graham issued an unfavorable decision.
13 (A.R. 27-34.) ALJ Graham found that plaintiff's asthma had medically
14 improved, and her asthma no longer met or medically equaled the severity
15 of Section 103.02(c)(2) or any other section of the medical listings.
16 (A.R. 28.) ALJ Graham also found that neither plaintiff's asthma nor
17 her attention deficit hyperactivity disorder ("ADHD") results in an
18 "extreme" limitation in any domain of functioning or a "marked"
19 limitation in two domains of functioning, and neither impairment
20 functionally equals the severity of the listings.[3] (A.R. 33.) ALJ
21 Graham determined that plaintiff had not been under a disability at any
22 time since February 1, 2002, and the Appeals Council subsequently denied
23 plaintiff's request for review of ALJ Graham's decision. (A.R. 4-6,
24 33.)

25

26 _____

27      [3]   To functionally equal a listing, a child's impairment must be
   of listing-level severity, meaning it must result in a "marked"
   limitation in two of the domains of functioning described in 20 C.F.R.
28 § 416.926a(g)-(l) or an "extreme" limitation in one of the domains.

3

1    On April 21, 2005, plaintiff's mother filed a Complaint in this
2    Court on behalf of plaintiff in Case No. CV 05-2695.   On February 3,
3    2006, pursuant to a stipulation of the parties, the Court entered an
4    Order remanding the matter for further administrative proceedings.
5    (A.R. 335-40.)   In the stipulated remand Order, the ALJ was directed to
6    "consider all of the evidence and evaluate the [p]laintiff's symptoms to
7    determine whether the [p]laintiff's condition medically improved" and
8    "include a comparison evaluation in the record."   (A.R. 337-38.)   On
9    March 28, 2006, the Appeals Council remanded the case to the ALJ for
10   compliance with the stipulated remand Order.   (A.R. 341-42.)

11

12   On October 17, 2006, plaintiff and her mother, who were represented
13   by counsel, testified at a hearing before ALJ Graham.   (A.R. 680-87.)
14   ALJ Graham continued the hearing to allow plaintiff to undergo a
15   consultative medical examination.   (A.R. 683.)   On October 25, 2007,
16   plaintiff, her mother, and their counsel appeared before ALJ Graham for
17   a supplemental administrative hearing.   (A.R. 688-709.)   ALJ Graham
18   again continued the hearing, because plaintiff had not yet undergone a
19   consultative medical examination.   (A.R. 686.)   On April 2, 2008,
20   following a consultative examination of plaintiff by Claudine Aguilar,
21   M.D., plaintiff, her mother, and their counsel attended a final hearing
22   before Administrative Law Judge Robert Evans ("ALJ").   (A.R. 710-34.)
23   On June 26, 2008, the ALJ issued an unfavorable decision, in which he
24   found medical improvement in plaintiff's asthma.   (A.R. 289-300.)
25   ///
26   ///
27   ///
28   ///

1

## SUMMARY OF ADMINISTRATIVE DECISION

2

3       Regarding plaintiff's asthma, the ALJ found that:

4

5       As compared with the findings in 1994, [plaintiff] no longer

6       requires nocturnal supplemental oxygen because of recurrent

7       episodes of hypoxemia.   There is no evidence of constant

8       wheezing and coughing, frequent emergency room treatments,

9       constant monitoring of the child's medical condition and

10      ongoing symptomatology despite treatment.   The treatment

11      regimen does not require multiple medications as well as use

12      of a nebulizer four times a day.

13

14  (A.R. 293.)

15

16      Regarding plaintiff's alleged mental impairment(s), the ALJ found

17  that plaintiff's ADHD, with which she had been diagnosed since the July

18  1, 1997 comparison point decision ("CPD"), is "severe," but plaintiff is

19  "not retarded and is not learning disabled," as plaintiff's mother

20  alleges.  (A.R. 295.)  The ALJ concluded that neither plaintiff's mental

21  health records nor plaintiff's school records:  support a finding that

22  plaintiff has a disabling mental condition; or corroborate the "marked"

23  or "extreme" mental limitations alleged by plaintiff's mother.  (A.R.

24  294-95.)

25

26      Thus, the ALJ determined that plaintiff's impairments do not meet

27  or medically equal any section of 20 C.F.R. Part 404, Subpart P,

28  Appendix 1, and do not functionally equal any of the impairments listed

in the medical listings (20 C.F.R. §§ 416.994a(b)(2), 419.926a and SSR 05-03p).  (A.R. 297.)  The ALJ concluded that plaintiff's disability ended as of February 1, 2002, and she has not become disabled again since that date.  (A.R. 299.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citation omitted).  The "evidence must be more than a mere scintilla but not necessarily a preponderance."  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice.  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

6

1

2      The Court will uphold the Commissioner's decision when the evidence

3 is susceptible to more than one rational interpretation.  Burch v.

4 Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may

5 review only the reasons stated by the ALJ in his decision "and may not

6 affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d

7 at 630; see also Connett, 340 F.3d at 874.  The Court will not reverse

8 the Commissioner's decision if it is based on harmless error, which

9 exists only when it is "clear from the record that an ALJ's error was

10 'inconsequential to the ultimate nondisability determination.'" Robbins

11 v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(quoting Stout v.

12 Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); see also Burch, 400

13 F.3d at 679.

14

15                            **DISCUSSION**

16

17      Plaintiff alleges the following two issues:  (1) whether the ALJ

18 properly reviewed the record and provided a proper comparison to deny

19 ongoing benefits; and (2) whether the ALJ properly considered the

20 witness testimony.  (Joint Stip. at 8.)  These issues are addressed

21 below, although not in the precise manner presented.

22

23 I.   **The ALJ's Finding That Plaintiff's Asthma Has Medically Improved Is**

24      **Supported By Substantial Evidence.**

25

26      Medical improvement is defined as "any decrease in the medical

27 severity of your impairment(s) which was present at the time of the most

28 recent favorable decision that you were disabled or continued to be

7

disabled." 20 C.F.R. § 416.994a(c). To determine whether there has been medical improvement, the claimant's current condition must be compared with the claimant's condition at the time of the most recent favorable determination or decision. 20 C.F.R. § 416.994a(b)(1). The most recent favorable determination or decision is the latest final determination or decision involving a consideration of the medical evidence and whether the claimant was disabled or continued to be disabled. 20 C.F.R. § 416.994a(c)(1).

In assessing whether plaintiff's asthma medically improved, the ALJ compared plaintiff's medical condition at the time of his decision to her medical condition at the time of the July 1, 1997 CPD, which was the last date on which plaintiff received a favorable disability decision. (A.R. 289-300, 739-41.) After carefully reviewing the record as a whole, the Court concludes that the ALJ's finding of medical improvement in plaintiff's asthma is supported by substantial evidence.[4]

In the 1997 CPD, ALJ Rubin determined that, as of June 14, 1994, plaintiff's asthma met Childhood Medical Listing 103.02(C)(2), which refers to severe "chronic pulmonary insufficiency with frequent need for nocturnal supplemental oxygen as required by persistent or recurrent episodes of hypoxemia." (A.R. 740.) ALJ Rubin based his favorable disability determination on evidence that plaintiff suffered from asthma with "constant wheezing, frequent emergency room treatments and still

---

[4]     As discussed below, while substantial evidence supports the ALJ's finding that plaintiff's asthma has medically improved since the 1997 CPD, the extent to which her asthma has medically improved is still unclear, as is the extent to which plaintiff is impaired by her "severe" ADHD and/or alleged learning disability.

8

symptomatic despite a complicated medical regimen" and supplemental oxygen due to persistent or recurrent episodes of hypoxemia. (A.R. 291, 740.)

In assessing the extent to which plaintiff's asthma improved since the 1997 CPD, the ALJ relied on plaintiff's treatment records from Kaiser Permanente, various consultative examination results, and the hearing testimony of plaintiff's mother to find medical improvement. (A.R. 296.)  Specifically, the ALJ analyzed the evidence of record and concluded that:

> As compared with the findings in 1994, [plaintiff] no longer requires nocturnal supplemental oxygen because of recurrent episodes of hypoxemia.  There is no evidence of constant wheezing and coughing, frequent emergency room treatments, constant monitoring of the child's medical condition and ongoing symptomatology despite treatment.  This treatment regimen does not require multiple medications as well as use of a nebulizer four times a day.

(A.R. 293.)  A review of the record as a whole supports the ALJ's finding of medical improvement.

On January 12, 2002, plaintiff underwent a comprehensive pediatric consultative examination by Alec Does, M.D.  (A.R. 223-28.)  Dr. Does personally examined plaintiff and reviewed her medical records from Kaiser Permanente from 1996, through 2001.  (A.R. 223.)  Upon examination, Dr. Does found plaintiff's lungs to be "clear to

9

auscultation bilaterally with no wheezes or rhonchi." (A.R. 226.) Dr. Does noted that plaintiff's last asthma-related emergency room visit was in 1996, and her last severe asthma attack was in 2001. (A.R. 223.) Dr. Does also noted that plaintiff has not required any hospitalizations for her asthma. (*Id*.) Dr. Does concluded that plaintiff's asthma was "stable clinically."[5]

On January 30, 2007, plaintiff underwent a second pediatric consultative examination by Chhaya Agarwal, M.D. (A.R. 642-43.) Dr. Agarwal examined plaintiff, specifically evaluating her asthma condition. (A.R. 642.) Upon examination, Dr. Agarwal found "clear breath sounds" and recommended continued management of plaintiff's asthma with an albuterol inhaler, advair, and steroids as needed. (A.R. 642-43.) Dr. Agarwal diagnosed plaintiff with "mild to moderate persistent" asthma and concluded that plaintiff's examination was "normal." (A.R. 643.)

On January 24, 2008, plaintiff underwent a third comprehensive pediatric consultative examination by Claudine Aguilar, M.D. (A.R. 648-57.) Upon examination, Dr. Aguilar found plaintiff's "lung sounds clear to auscultation bilaterally with good air entry. There are no wheezes, ronchi, or rales." (A.R. 650.) Dr. Aguilar opined that plaintiff's asthma was "exercised-induced and mild-moderate persistent." (A.R. 651.) As part of the consultative examination, radiographs of plaintiff's chest were taken, and plaintiff underwent a pulmonary function study to measure the extent to which plaintiff's lungs were

---

[5]   At that time, plaintiff's asthma medications included albuterol and intal, and occasionally oral prednisone. (A.R. 224.)

10

able to take in and release air.   (A.R. 653-54.)   Plaintiff's chest radiographs were within "normal limits" and showed that plaintiff's "lungs [were] clear," and her "pulmonary vascularity [was] normal." (A.R. 654.)     The pulmonary function study revealed only mild obstruction.   (A.R. 652-53.)   Dr. Aguilar concluded that plaintiff's asthma was "clinically stable," and she recommended that plaintiff continue her asthma medications.[6]   (A.R. 651.)

In addition to the consultative examination results, plaintiff's treatment records from Kaiser Permanente support the ALJ's finding that plaintiff's asthma had medically improved.   For example, as compared with the findings in the 1997 CPD, when plaintiff required "frequent emergency room visits," plaintiff sought treatment at Kaiser only twice in 2002; both times her lungs were described as "clear," and her treatment consisted of being provided with albuterol inhaler doses. (A.R. 243-44.)   In December 2003, plaintiff sought treatment for a fever and sore throat, and at the time of treatment, plaintiff's asthma condition was described as "rhonchi on and off" without wheezing. (A.R. 599.)   Plaintiff was treated for asthma exacerbation once in October 2004, once in March 2005, and once in April 2005 (A.R. 590, 593, 596). In March 2008, plaintiff's asthma was described by her treating physician as "persistent controlled."   (A.R. 678.)   All in all, plaintiff's treatment records since the 1997 CPD show no evidence of frequent, severe, or prolonged asthma attacks requiring treatment, but instead demonstrate that plaintiff's asthma, while persistent, appears to be under good control with her current medications.

---

[6]     At the time of the examination, plaintiff's asthma medications included advair, albuterol, intal, and QVAR.   (A.R. 649.)

Much of plaintiff's mother's hearing testimony and statements support the ALJ's finding of medical improvement.  At the 2004 hearing, plaintiff's mother testified that plaintiff has had no recent asthma-related hospitalizations or emergency room visits, and plaintiff does not see a doctor for her asthma on a regular basis, but is simply treated at home.  (A.R. 58, 293.)  Moreover, unlike the symptoms plaintiff exhibited at the time of the 1997 CPD, *i.e.*, suffering from "constant and persistent wheezing and coughing," plaintiff's mother reported that now plaintiff "occasionally becomes short of breath or wheezes after running or exercising for more than 20-30 minutes at a time."  (A.R. 223, 269.)  At the time of the 1997 CPD, plaintiff was suffering from severe and frequent asthma attacks despite taking multiple medications and using a nebulizer four times a day.  Plaintiff's mother reported that now plaintiff only has two to three asthma attacks per month, with flare ups during the winter months, and although she requires daily doses of intal and/or albuterol metered dose inhalers after physical activity to control her asthma symptoms, she does not require the use of a nebulizer four times a day.  (A.R. 58, 223, 266-67, 293, 717, 727.)

Thus, substantial evidence supports the ALJ's conclusion that plaintiff's asthma had medically improved.

**II.** **Substantial Evidence Supports The ALJ's Finding That Plaintiff's Asthma No Longer Met Or Medically Equaled Listing 103.02(C)(2), The Listing Plaintiff Met At The Time Of The 1997 CPD.**

If the ALJ finds medical improvement, he must then determine

12

1  whether plaintiff's impairment still meets, medically equals, or
2  functionally equals the same listing that it met, medically equaled, or
3  functionally equaled at the time of the CPD.  20 C.F.R. § 416.994a.  If
4  it does, then the claimant is still disabled.  If it does not, then the
5  ALJ must determine if the claimant is disabled, pursuant to 20 C.F.R. §
6  416.924(c) and(d), considering *all* the impairments that the claimant has
7  now, including any not present or not considered at the time of the CPD.
8  20 C.F.R. § 416.994a(b)(3).  The ALJ must then determine if the
9  claimant's impairments meet, medically equal, or functionally equal the
10 severity of any other impairment listed in 20 C.F.R. Part 404, Appendix
11 1, Subpart P.

12

13      For the reasons detailed in Section I *supra*, substantial evidence
14 supports the ALJ's conclusion that plaintiff's asthma medically
15 improved, to the extent that it no longer met or medically equaled the
16 requisite elements of Listing 103.02(C)(2).  The ALJ's finding is
17 supported by evidence of record that plaintiff no longer required
18 "nocturnal supplemental oxygen because of recurrent episodes of
19 hypoxemia," nor did she continue to suffer from "constant wheezing and
20 coughing, frequent emergency room treatments, constant monitoring of
21 [her] medical condition, and ongoing symptomatology despite treatment,"
22 as she did at the time of the 1997 CPD.  (A.R. 293-94, 740.)
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

III. **It Is Unclear Whether Plaintiff's Current Impairments, Considered Singularly Or In Combination, Meet, Medically Equal, Or Functionally Equal Another Listing, As The ALJ Failed To Obtain An Evaluation Of Plaintiff's Case In Its Entirety.**

Plaintiff argues that the ALJ failed to evaluate the elements of other listings to determine whether plaintiff's physical and mental impairments meet, medically equal, or functionally equal a listing other than Listing 103.02(C)(2). (Joint Stip. at 13.) Since the 1997 CPD, plaintiff has been diagnosed with ADHD, which the ALJ found to be "severe," and plaintiff's mother alleges that plaintiff has a learning disability. (A.R. 56, 292, 296.) The ALJ concluded that neither plaintiff's mental health records nor plaintiff's school records support finding a disabling mental condition. (A.R. 294-95.) However, it is unclear whether plaintiff's asthma, in combination with her "severe" ADHD and alleged learning disability meet, medically equal, or functionally equal another Listing, because the ALJ failed to evaluate the elements of the listings, other than Listing 103.02(C)(2).

Further, plaintiff argues that the ALJ erred in his consideration of the evidence, because the ALJ failed to comply with <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006 (9th Cir. 2003), in that the ALJ should have, but failed to, seek medical expert testimony with respect to the evaluation of plaintiff's case as a whole. (Joint Stip. at 13-14.) Plaintiff argues that the ALJ's failure to adhere to the holding of <u>Howard</u> compels remand of this matter to allow the ALJ to "obtain a case evaluation, based on the record in its entirety, from a pediatrician or other appropriate specialist, rather than simply constructing his own

14

1   case evaluation from the evidence in the record." (Joint Stip. at 14,

2   citing <u>Howard</u>.)

3

4       In <u>Howard</u>, the Ninth Circuit reversed and remanded the decision of

5   an ALJ who constructed a case evaluation of his own by analyzing

6   existing medical reports of record without obtaining a case evaluation

7   of the child plaintiff's case as a whole.[7] <u>Howard</u>, 341 F.3d at 1014.

8   The Ninth Circuit held that, while the ALJ's decision was supported by

9   substantial evidence,[8] the matter required remand, because the ALJ failed

10  to comply with the requirement of 42 U.S.C. § 1382c(a)(3)(i) that the

11  ALJ "shall make reasonable efforts to ensure that a qualified

12  pediatrician or other individual who specializes in a field of medicine

13  appropriate to the disability of the individual (as determined by the

14  Commissioner of Social Security) evaluates the case of such an

15  individual." *Id.* at 1013. The Ninth Circuit interpreted this statutory

16  language to mean that "the ALJ is required to make a reasonable effort

17  to obtain a case evaluation, based on the record in its entirety, from

18  a pediatrician or other appropriate specialist, rather than simply

19  constructing his own case evaluation from the evidence in the record."

20  *Id.* at 1014.

21

22      Critically, in explaining why the district court erred in its

23  interpretation of the statutory language, the Ninth Circuit stated in

24

25      [7]  The child plaintiff in <u>Howard</u> was found disabled due to a
    borderline IQ and developmental delays.  <u>Howard</u>, 341 F.3d at 1006.
26
27      [8]  The ALJ found, and both the district court and Ninth Circuit
    agreed, that substantial evidence supported the ALJ's finding of medical
    improvement in the child plaintiff's mental impairments.  <u>Howard</u>, 341
28  F.3d at 1012.

Howard that:

> The district court found that the ALJ did not err in failing
> to obtain a case evaluation from a qualified expert because
> the record was replete with reports from expert physicians who
> had examined [the child plaintiff]. *There is a distinction,
> however, between having an expert evaluate a claimant with
> respect to that expert's particular specialty, and having an
> expert evaluate a claimant's case in its entirety, considering
> all of the medical records and determining whether those
> indicate that the claimant is disabled within the meaning of
> the Social Security Act.*

341 F.3d at 1014 n.2 (emphasis added).

The Ninth Circuit concluded that, despite the numerous medical reports in the record, *to wit*, reports by a developmental psychologist, a neuropsychology fellow, a licensed psychologist, a school psychologist, a registered occupational therapist, a speech/language therapist, a school psychometrist, a speech/language pathologist, a child neurologist, a child and adolescent psychiatrist, and a pediatric cardiologist, the ALJ erred because "he made no effort to have [the child plaintiff's] case evaluated in its entirety." Howard, 341 F.3d at 1014. Therefore, the Court remanded the matter to allow the ALJ to obtain a comprehensive "case" evaluation based on the record in its entirety by the appropriate specialist. *Id.*

The facts and circumstances surrounding the ALJ's decision in the

16

instant matter are substantially similar to those in <u>Howard</u>.  Here, as in <u>Howard</u>, the record contains several consultative reports, medical treatment notes, and school records that bear directly plaintiff's physical and mental impairments.[9]  As in <u>Howard</u>, the ALJ constructed his own case evaluation from the evidence in the record, but failed to obtain an evaluation of plaintiff's case in its entirety by a medical expert or appropriate specialist.  In a case such as this one, in which a comprehensive evaluation of whether plaintiff's physical and mental impairments meet, medically equal, or functionally equal one or more of the medical listings is necessary, it is especially important for the ALJ to solicit the opinion of a pediatrician or other qualified medical expert regarding plaintiff's case as a whole.  The ALJ failed to do so here.

Defendant contends that the ALJ complied with <u>Howard</u>, because the ALJ obtained and properly relied on two "comprehensive pediatric evaluations:  the first in January 2002, prior to the cessation of her disability benefits (AR 223-28); and another in January 2008, just prior to the ALJ decision now at issue (AR 648-51)."  (Joint Stip. at 18.)  However, defendant's contention is based on a misreading of the statute, because as the Ninth Circuit made clear in <u>Howard</u>, there is a distinction between "having an expert evaluate a claimant with respect to that expert's particular specialty, and having an expert evaluate a

---

[9]     The record contains several pediatric consultative reports as discussed in Section I *supra*.  The record also contains two psychological consultative examinations:  in December 2001, plaintiff was examined by Leslie Roman, Ph.D., who diagnosed plaintiff with ADHD and low average intellectual functioning (A.R. 216-22); and in December 2006, plaintiff was examined by Ahmad R. Riahinejad, Ph.D., who stated that plaintiff "did not put forth her best effort into the testing" and that she tested within the "malingering range" (A.R. 628-33).

claimant's case in its entirety, considering all of the medical records and determining whether those indicate that the claimant is disabled within the meaning of the Social Security Act." Howard, 341 F.3d at 1014 n.2.

In any event, the ALJ should have called a medical expert to testify at the hearing, because while the ALJ's finding of medical improvement in plaintiff's asthma is supported by substantial evidence, the extent to which plaintiff has medically improved, and whether plaintiff continues to meet another listing taking into consideration *all* of plaintiff's impairments, including her "severe" ADHD and alleged learning disability, remains unclear. Without the guidance of a medical expert or other qualified medical advisor, the ALJ concluded, in contravention of Howard, that plaintiff does not have an impairment or combination of impairments that meet, medically equal, of functionally equal any of the listings.

Accordingly, in view of the Ninth Circuit's holding in Howard, this matter must be remanded for further proceedings to allow the ALJ to seek medical expert testimony based upon the medical expert's review of the entire record, rather than upon the ALJ's construction of his own case evaluation from the existing evidence in the record. Howard, 341 F.3d at 1014. On remand, with the assistance of a qualified medical expert, the ALJ shall evaluate the elements of the listings, taking into consideration *all* of plaintiff's impairments, including her "severe" ADHD and alleged learning disability, to determine whether plaintiff's impairments meet, medically equal, or functionally equal another

1   listing, other than Listing 103.02(C)(2).[10]

2

3   **IV.   The ALJ Properly Considered The Lay Witness Testimony Of**
4        **Plaintiff's Mother.**

5

6        In evaluating the credibility of a claimant's assertions of

7   functional limitations, the ALJ must consider reported observations of

8   the claimant by lay witnesses. <u>Stout</u>, 454 F.3d at 1053. "[F]riends and

9   family members in a position to observe a claimant's symptoms and daily

10  activities are competent to testify as to [the claimant's] condition."

11  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918-19 (9th Cir. 1993); 20 C.F.R. §

12  404.1513(d)(4) ("we may also use evidence from other sources to show the

13  severity of your impairment(s) . . . .   Other sources include, but are

14  not limited to . . . spouses, parents and other care-givers, siblings,

15  other relatives, friends, neighbors, and clergy").   "If an ALJ

16

_____

17       [10]    In his portion of the Joint Stipulation, defendant relies on
18  <u>Jamerson v. Chater</u>, 112 F.3d 1064 (9th Cir. 1997), to support the ALJ's
    decision that plaintiff was not disabled.   (Joint Stip. at 16.)
19  Defendant contends that the instant case is "factually similar to
    *Jamerson v. Chater*, a Ninth Circuit case in which the court upheld
20  Defendant's decision that a child with asthma, who also alleged a
    learning disability, was not disabled under the Act." (*Id*.)   Defendant
21  claims that the Ninth Circuit "held that an ALJ's finding that a child
    who spend 90 minutes each day in a special education classroom, but who
22  was not failing his classes, constituted substantial evidence in support
    of the ALJ's decision." (*Id*.)   While defendant is not entirely incorrect
23  in his interpretation of the holding in <u>Jamerson</u>, defendant fails to
    mention the more salient proposition for which <u>Jamerson</u> stands, namely,
24  that a special education teacher is not an "acceptable medical source"
    within the meaning of the social security regulations, and, thus, should
25  not be regarded as the equivalent of a treating physician.   <u>Jamerson</u>,
    112 F.3d at 1066.   While the instant case may be "factually" similar to
26  <u>Jamerson</u> with respect to the alleged disabilities, *to wit*, both
    plaintiffs suffered from asthma and both plaintiffs alleged a learning
27  disability, that is where the similarity between the two cases ends.
    Legally, plaintiff has not raised as an issue whether any of plaintiff's
28  teachers "should be regarded as the equivalent of a treating physician,"
    as plaintiff did in <u>Jamerson</u>.

disregards the testimony of a lay witness, the ALJ must provide reasons 'that are germane to each witness.'" <u>Bruce v. Astrue</u>, 557 F.3d 1113, 1114 (9th Cir. 2009)(citation omitted).  Further, the reasons "germane to each witness" must be specific.  <u>Stout</u>, 454 F.3d at 1054 (explaining that "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony").

An ALJ may "properly discount lay testimony that conflict[s] with the available medical evidence" (<u>Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir. 1984)), particularly when, as in <u>Vincent</u>, "lay witnesses [are] making medical *diagnoses*," because "[s]uch medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence." <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996)(original emphasis).  When as here, however, a lay witness testifies about a claimant's symptoms, such testimony *is* competent evidence and cannot be disregarded without comment.  *Id*.  Under <u>Stout</u>, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  454 F.3d at 1055.

Plaintiff contends that the ALJ "discounted" the testimony of plaintiff's mother.  (Joint Stip. at 31.)  However, as defendant correctly notes, the ALJ properly considered plaintiff's mother's testimony and found that much of her testimony actually supported the ALJ's finding that plaintiff's condition had medically improved.  (Joint Stip. at 34.)

20

The ALJ accurately summarized the 2004 hearing testimony of plaintiff's mother as follows:

> [Plaintiff's] mother complained of her child's poor attention and concentration, difficulty completing tasks, poor academic performance due to frequent asthma related absences, the need to take 10-20 Prednisone pills and use of inhalers and that her child is hyperactive. Otherwise, the mother testified in 2004 that her child was in regular classes in school, except for one special education class; that she has never been held back in a grade in school; that the child takes physical education classes, but does not fully participate; that she rides her bicycle and likes to play dodge ball; that the child has had no recent asthma-related hospitalizations or emergency room visits; that the child does not take any medication for ADHD and has not been seen by a mental health provider, counselor or psychiatrist, that she does not have any discipline problems at school; that she is able to care for her hygiene and grooming independently; that she takes no speech classes; and that she can see okay with glasses.

(A.R. 291.)

In addition, the ALJ accurately summarized the 2008 hearing testimony of plaintiff's mother as follows:

> [Plaintiff's] mother alleges that [plaintiff] continues to be disabled by her asthma. The witness explain[ed] that

21

[plaintiff's] morning breathing treatments render her often
tardy at school.  The mother previously complained that her
daughter is disabled due to frequent asthma attacks that
require the use of steroids and severely restrict physical
activity.  In addition[,] [plaintiff] is allegedly disabled by
educational difficulties, especially in the areas of math and
health science.  The mother explained that the child is in a
resource class in these courses and engages tutors through an
after school program.  She had previously noted that
[plaintiff] has trouble with concentration and attention.  The
mother was concerned that [plaintiff's] participation in the
resource class restricts her choice of elective classes.

(A.R. 291.)  Finally, the ALJ noted plaintiff's mother's allegations
that plaintiff suffered from "walking and coordination problems" and a
"learning disability."  (*Id.*)

    The ALJ discussed and considered plaintiff's mother's testimony,
clearly accepting it in part and properly rejecting it in part.  (*See*
A.R. 291, 293, 295-98.)  As discussed in Section I *supra*, the ALJ
accepted much of the mother's testimony and relied on it to support his
finding of medical improvement in plaintiff's asthma condition.  As for
the testimony rejected by the ALJ, he discussed it and clearly stated
that he did not give

            weight to the hearing testimony that [plaintiff] has marked
            and extreme functional limitations, because the statements
            from [plaintiff] and her mother are not consistent with the

22

information given to the primary care physician, as documented in the longitudinal treatment record. They are also not consistent with how the doctor finds [plaintiff] presents herself at the infrequent follow up evaluations. I am not bound to accept statements from the mother that are inconsistent with the longitudinal treatment record.

(A.R. 297-98.)

A review of the record supports the ALJ's reason for rejecting the inconsistent testimony of plaintiff's mother regarding her allegations of plaintiff's marked and extreme functional limitations. *See* Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005)("[i]nconsistency with medical evidence" constitutes a germane reason for discrediting the testimony of a lay witness)(citation omitted). Accordingly, the ALJ did not err in his consideration of the testimony of plaintiff's mother.

**V.    Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). However, where there are outstanding issues that must be resolved before a determination of

disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

Here, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 31, 2010

_Margaret A. Nagle_

MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE